U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2011 NOV 28 PM 2:59

CLERK
BY ＰＭ
DEPUTY CLERK

| | |
|---|---|
| EDWARD J. ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:10-cv-111 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Defendant. ) | |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ORDER REVERSING THE COMMISSIONER'S DECISION AND DENYING DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**
(Docs. 19 & 25)

This matter comes before the court on the motion for summary judgment of Plaintiff Edwards J. Roberts seeking reversal of the decision of Defendant, the Commissioner of Social Security (the "Commissioner") (Doc. 19), and on the Commissioner's motion for an order affirming the decision (Doc. 25). The parties completed briefing on July 2, 2011, and have waived oral argument.

Plaintiff contends that the decision of the Administrative Law Judge Debra Boudreau (the "ALJ") finding him not disabled is not supported by substantial evidence. More specifically, at issue in this case is: (1) whether the ALJ's determination that Plaintiff could perform a range of sedentary to light work is supported by substantial evidence; (2) whether the ALJ erred in how she evaluated Plaintiff's credibility; and (3) whether the ALJ erred in relying on the vocational expert for jobs Plaintiff could perform where the hypothetical question did not accurately reflect Plaintiff's limitations.

Plaintiff is represented by Paula J. Kane, Esq. The Commissioner is represented by AUSA Timothy C. Doherty, Jr.

I.     **Factual Background.**

Plaintiff was born in September 1959 and is currently 52 years old. He is a high school graduate, and his past relevant work includes being a dishwasher, delivery driver, taxi driver, and stainless steel fabricator. Plaintiff's claimed onset of disability is February 1, 2008, which is when he was terminated by his employer, Advanced Auto Parts, where he worked as a delivery person.

Plaintiff suffers from rheumatoid arthritis, which he has had since approximately 2002. He reports joint pain, swelling, and stiffness over the years. The rheumatoid arthritis has affected Plaintiff's lungs although it has caused minimal deformity and is not particularly active. Plaintiff asserts that his joints are stiff in the mornings for up to two hours, and he walks with a slight limp favoring his right leg. Between February 2007 and October 2009, Dr. Bonita Libman treated Plaintiff for his rheumatoid arthritis.

Plaintiff has degenerative disk disease and degenerative arthritis which he claims causes him back pain. Although Dr. Libman prescribed physical therapy and medication for Plaintiff's condition, Plaintiff decided not to take the medication due to concerns about drowsiness and the record does not indicate that Plaintiff attended physical therapy. In April 2008, because Plaintiff suffered some hip pain, he had radiological studies done for his hip, which showed a small inguinal hernia. He alleges shoulder impairment, with a history of rotator cuff tears and some difficulty with movement. Plaintiff also suffers from depression (including suicidal ideation), headaches, and high blood pressure (the latter is controlled by medication).

Plaintiff has cavitary lung disease and from March 2007 through July 2009, he was treated by a pulmonologist, Dr. Anne Dixon. On several occasions, Plaintiff has experienced episodes of hemoptysis, which is coughing up blood, one of the most severe occurring in June 2009. That episode required hospitalization and cauterization of the bleeding vessel. Other episodes have been successfully treated with antibiotics. Plaintiff has reduced lung functioning and shortness of breath with exertion. His lung condition has generally worsened over time, however, when Plaintiff ceases smoking, his condition improves. In February 2009, Plaintiff's lung condition showed some

improvement and at that time, did not appear to be deteriorating further. However, in June 2009, Plaintiff had a CT scan done on his chest which showed worsening lung aeration. Plaintiff has been offered repeated assistance with smoking cessation.

In 2007, Plaintiff was diagnosed with non-Hodgkins lymphoma, which appeared to be triggered by medical treatment for his other ailments. In November and December 2007, Dr. Peter Burke and Dr. Michael Kennedy treated Plaintiff primarily for his lymphoma. He underwent chemotherapy and his cancer is now in remission.

Plaintiff describes his activities as shopping, driving, cooking, light household chores, and self-care. He reports occasionally hunting and fishing although not as frequently or as long as he was able to perform these activities in the past.

In May 2008, non-examining agency physician Dr. Christine Conley completed a Residual Functional Capacity ("RFC") assessment after reviewing Plaintiff's medical records. She concluded that Plaintiff could occasionally lift or carry up to twenty pounds, frequently lift or carry up to ten pounds, stand or walk for a total of at least two hours in an eight-hour day, sit for a total of about six hours in an eight-hour day, and had unlimited push and pull restrictions. In addition, Dr. Conley noted some postural limitations, but no manipulative, visual, communicative, or environmental limitations.

On September 16, 2008, Dr. Geoffrey Knisely reviewed the evidence in the file and the RFC dated May 16, 2008 and agreed with Dr. Conley's RFC assessment with the further limitation of a "walk/stand limitation of 2-3 hrs in 8 hr day." (AR 407.)

In July 2009, Jeffrey Fine, a physician's assistant, opined on a Training and Employment Medical Report form that Plaintiff would be unable to work at any type of employment for a year. The extent of Mr. Fine's examination in support of this conclusion is unclear as the form consists of a single page document with boxes checked and minimal notations. Plaintiff's condition is identified as lymphoma and rheumatoid arthritis, neither of which Mr. Fine would presumably be qualified to evaluate absent some indication of his credentials.

Since Dr. Conley's and Dr. Kinsely's 2008 RFC assessments, Plaintiff has continued to be treated by an array of medical providers as set forth in the post 2008

3

records of Plaintiff's treating physicians. Neither Dr. Conley nor Dr. Knisely were asked to review these subsequent medical records.

## II. Procedural History.

Plaintiff filed applications for benefits under Title II and Title XVI of the Social Security Act. His applications were denied initially on May 19, 2008, and upon reconsideration on August 11, 2008. An administrative video hearing was then held before the ALJ on December 3, 2009, and she issued an unfavorable decision on December 8, 2009. Although the Decision Review Board selected the claim for review, it did not complete its review within the allotted time frame. Accordingly, the ALJ's decision became the Commissioner's final decision. Plaintiff then timely filed this action for review of the decision pursuant to 42 U.S.C. § 405(g).

In order to receive benefits, a claimant must be "disabled"[1] on or before his or her "date last insured" under the Social Security Act. 42 U.S.C. § 423(a)(1)(A). To determine whether a claimant is "disabled," the regulations require application of a five step sequential evaluation process. *Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004); 20 C.F.R. §§ 404.1520, 416.920. The answer to the inquiry at each step determines whether the next step's question must be answered.

Step one asks whether the claimant has engaged in substantial gainful activity since the alleged onset date of disability. If not, then step two asks whether the claimant has any "impairments" that are "severe." If one or more "severe impairments" are found, step three asks whether any of these impairments meet or equal one of the listed impairments found in Appendix I of 20 C.F.R. § 404.1599. If an impairment meets or equals a listed impairment, then the claimant is deemed "disabled." If not, step four asks whether the claimant retains RFC to do his or her past relevant work. Finally, if the claimant is unable to do prior relevant work, step five asks whether the claimant is able to do any job available in significant numbers in the national economy. *Id*; 20 C.F.R. §

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

404.1560(c)(2). Through the first four steps, the claimant bears the burden of proving disability. At step five, that burden shifts to the Commissioner to show that there is other work in the national economy that the claimant can perform. *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981).

In this case, the ALJ followed the sequential evaluation through all five steps. The ALJ began with a preliminary finding that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2012. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2008, which is the alleged onset date. At the second step, the ALJ found that Plaintiff "has the following severe impairments: (1) rheumatoid arthritis with cavitary lung disease, (2) mild lumbar degenerative changes, and (3) non-Hodgins [sic] Lymphoma in remission." (AR 10.) The ALJ also found two non-severe impairments, which were headaches and depression. She found these non-severe because they "do not have more than a minimal effect on claimant's ability to perform basic work functions." (AR 12.) At the third step, the ALJ found that none of the severe impairments or combination of impairments met or medically equaled one of the listed impairments in Appendix I of 20 C.F.R. § 404.1599. The ALJ considered Plaintiff's rheumatoid arthritis, degenerative disc disorder, and his pulmonary impairment.

At the fourth step, the ALJ found that Plaintiff

has the residual functional capacity to perform sedentary to light work as defined in 20 CFR 404.1567(a) & (b) and 416.967(a) & (b), respectively, except that the claimant can occasionally lift up to 20 pounds, frequently lift/carry up to 10 pounds, stand/walk for up to 3 hours in an 8 hour day with normal breaks, sit for 6 hours in an 8 hour work day with normal breaks. Further, the claimant can occasionally climb ramps and stairs but can never climb ladders. He is limited to 1 or 2 step tasks in a "low stress" environment, meaning only occasional changes in the work setting.

(AR 14.)

At the fifth step, the ALJ concluded that Plaintiff was unable to perform his past relevant work, as "[t]he exertional demands of past relevant work exceed the claimant's residual functional capacity." (AR 17.) The ALJ also concluded that there are jobs that

exist in significant numbers in the national economy that Plaintiff can perform. She based this conclusion on the testimony of a vocational expert who opined that Plaintiff could perform occupations such as security guard, storage area clerk, and outside delivery. Accordingly, the ALJ concluded that Plaintiff was not disabled from February 1, 2008 through the date of that decision on December 8, 2009.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). Sometimes substantial evidence supports multiple conclusions, and "[w]here there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

"[I]n assessing whether the evidence supporting the Secretary's position is substantial, [the court] will not look at that evidence in isolation but rather will view it in light of other evidence that detracts from it." *New York ex rel. Bodnar v. Sec'y of Health and Human Servs.*, 903 F.2d 122, 126 (2d Cir. 1990). Accordingly, a court should "reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having 'rational probative force.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Consol. Edison*, 305 U.S. at 230).

It is the ALJ that resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the ALJ's. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

Plaintiff contends that the ALJ's decision must be reversed because it is not based on substantial evidence and ultimately errs in not finding Plaintiff disabled. The court considers the issue of Plaintiff's credibility first, then turns to the remaining issues.

### B. Whether the ALJ Erred in Evaluating Plaintiff's Credibility.

Plaintiff contends that the ALJ erred in evaluating his credibility for a number of reasons including because the ALJ allegedly used Plaintiff's continued smoking as "a rationale for rejecting the serious nature of plaintiff's pulmonary problems." (Doc. 33 at 11.) Plaintiff contends that it is not clear from the medical record that his condition improved when he periodically stopped smoking. In addition, he contends that there is no evidence that his ability to work would be restored if he were to quit smoking.

The Commissioner counters that this is not a situation in which Plaintiff's claim was denied because he failed to follow a prescribed treatment. Instead, "the ALJ simply took Plaintiff's failure to stop smoking [in] the face of his physicians' advice to stop . . . into consideration when assessing Plaintiff's credibility." (Doc. 25 at 11.)

Numerous courts within the Second Circuit have considered smoking when evaluating credibility. *See, e.g., Deeley v. Astrue*, No. 6:08-CV-448 (FJS), 2011 WL 454505, at *6 (N.D.N.Y. Feb. 3, 2011) (upholding adverse credibility finding where, among other considerations, plaintiff continued to smoke); *Mongold v. Astrue*, No. 09-CV-855s, 2010 WL 2998919, at *3 (W.D.N.Y. July 27, 2010) (upholding adverse credibility finding based on, among other factors, plaintiff's intermittent noncompliance with treatment, including plaintiff's continued smoking); *Talty v. Astrue*, No. 3:08-CV-997 (CFD)(TPS), 2010 WL 1963245, at *5 (D. Conn. May 5, 2010) (upholding adverse credibility finding and stating that "[i]n the present case, the ALJ explained that he did not find the plaintiff credible on the basis of his past drug abuse, memory problems, continued smoking despite a pulmonary condition, and his ability to travel to casinos for gambling."). Here, the ALJ properly took into consideration Plaintiff's continued smoking in evaluating Plaintiff's claims without using it as the touchstone for her credibility analysis.

In assessing Plaintiff's credibility, the ALJ further properly considered the objective medical evidence and Plaintiff's daily activities and treatment, including the location, duration, frequency, and intensity of Plaintiff's pain; precipitating and aggravating factors; the type, dosage, and effectiveness of any medications taken to alleviate pain; and any treatment provided to reduce pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(v). "Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness. But it is nevertheless possible to upset a credibility finding if, after examining the ALJ's reasons for discrediting testimony, [her] . . . finding is patently wrong." *Larson* v. *Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (internal citations omitted); *see also Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'") (citation omitted).

Plaintiff nonetheless contends that the ALJ put "the cart before the horse" in ruling that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (Doc. 33 at 7; AR 15.) Plaintiff further argues that the ALJ mischaracterized Plaintiff's daily activities in determining that those activities were inconsistent with his claimed physical limitations, and that Plaintiff's testimony was actually consistent with the medical evidence in the record which demonstrates that Plaintiff has marked limitations in virtually all of his activities. Plaintiff points out that a person need not be an invalid to be found disabled. *See Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988).

The Commissioner asks the court to affirm the ALJ's credibility determination and notes that "[t]he fact the Plaintiff disagrees with the ALJ's assessment of the . . . evidence is not a proper ground for reversal." (Doc. 25 at 10.) The Commissioner argues that provided the ALJ's credibility determination is supported by substantial evidence, it is entitled to deference and should be upheld. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) ("In this case, if the ALJ after weighing the objective medical evidence in

the record, appellant's demeanor, and other indicia of credibility had decided to discredit appellant's claims of severe, disabling pain, then the decision would be supported by substantial evidence and we would affirm.").

In this case, the ALJ supported her credibility determination through reliance on objective medical evidence, Plaintiff's testimony, the RFC assessment, and the ALJ's own observations of Plaintiff during the hearing. While the court may view this same evidence in a light more favorable to Plaintiff, the court is not entitled to substitute its own credibility determination and reject the ALJ's unless it was "patently unreasonable." *Pietrunti*, 119 F.3d at 1042. Here, that exacting standard has not been satisfied.

### C. Whether the ALJ's RFC Assessment was in Error.

Plaintiff next contends that the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence. In particular, Plaintiff argues that the ALJ erred in giving the opinions of the non-examining agency physicians Dr. Conley and Dr. Knisely "great weight"[2] because "the opinions were not supported by the bulk of the medical evidence in the record" and because "there was important medical evidence added after the reviewing physicians had looked at the file which might have resulted in them rendering a different opinion." (Doc. 19 at 13.)

As the Commissioner correctly points out, Plaintiff's first argument, that the agency physicians' opinions were not supported by the "bulk" of the evidence, misstates the applicable standard of review. "The question for [the court's] review is not whether the evidence preponderates in the [Commissioner's] favor." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's

---

[2] Because Dr. Conley and Dr. Knisely are not treating physicians, their opinions are not entitled to controlling weight. The opinions of non-treating physicians are assessed according to the factors set forth in 20 C.F.R. § 404.1527(d); *see also* SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006). These factors include: (1) the examining relationship between the claimant and the medical source; (2) the treatment relationship, including its length, nature, and frequency of evaluation; (3) the degree to which the medical source provides evidentiary support for his or her opinion; (4) how consistent the opinion is with the entire record; and (5) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (d)(3)-(d)(6).

position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reaching his or her conclusion, the ALJ is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

The record in this case presents a close question as to whether the "substantial evidence" standard has been satisfied. The ALJ thoroughly evaluated the medical record up to the RFC assessments, considered Plaintiff's activities, and made a determination that the record evidence was consistent with the RFC determinations. However, Plaintiff is correct that, to some extent, the ALJ dismissed, failed to adequately discuss, and minimized the evidence from treating physicians that supported Plaintiff's allegations of pain, limitation of motion, worsening lung condition, and the disabling combined impact of all of Plaintiff's impairments. *See Irvine v. Sullivan*, No. CV-91-500 (RJD), 1992 WL 245581, at *4 (E.D.N.Y. Aug. 11, 1992).

At this juncture, however, the court need not resolve whether substantial evidence prior to May 2008 supports the non-examining physicians' RFC assessments because it is beyond dispute that those RFC assessments do not take into consideration post 2008 medical evidence that arguably supports a conclusion that Plaintiff's conditions, or some of them, are worsening. Although the ALJ cites some of this subsequent evidence, the court cannot determine if and how it was factored into the ALJ's RFC determination. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (opining that agency RFC assessment forms could not constitute substantial evidence that claimant was capable of performing full range of light work at the time of the hearing because the opinions in those forms were not based on the full record in the case, showing that claimant's health had substantially deteriorated). At best, the court is left with a conclusion that the only RFC assessments in this case are based upon a limited period of observation by non-treating and non-examining agency physicians who relied upon an incomplete record for their determinations. Remand to ensure that the RFC assessment is based upon the entire record is therefore appropriate.

### D. Whether the ALJ Erred in Relying on the Vocational Expert's Testimony.

Finally, Plaintiff argues that it is unclear from the hearing transcript whether the vocational expert was asked about jobs available with the requisite accommodations or whether she was asked about all jobs. Plaintiff contends that because of the lack of clarity in the question, the ALJ should not have relied on the vocational expert's testimony. The Commissioner counters that the question clearly included the necessary limitations and that, in any event, Plaintiff's counsel could have and should have asked clarifying questions at the ALJ hearing if the numbers provided were unclear. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause [Plaintiff's] lawyer did not question the basis for the vocation expert's testimony . . . any objection to it is forfeited." ); *Baranich v. Barnhart*, 128 Fed. App'x 481, 489 (6th Cir. 2005) (finding no error where plaintiff's attorney voluntarily failed to continue cross-examination of vocational expert after ALJ directive to rephrase a question).

Again, the court need not address this issue because having remanded the matter for reconsideration of Plaintiff's RFC, the court remands for reconsideration of step five as well. *See Kelly v. Astrue*, 2011 WL 817507, at *14 (N.D.N.Y. Jan. 18, 2011) (where "the ALJ's RFC analysis was flawed," the step five analysis should also be revisited on remand); *Edel v. Astrue*, 2009 WL 890667, at *24 (N.D.N.Y. Mar. 30, 2009) ("As the [c]ourt has already recommended remand based on the ALJ's . . . RFC analys[i]s, the ALJ's application of the grid at step five is necessarily flawed, preventing the [c]ourt from appropriately analyzing the RFC determination." ).

### E. Extent of Remand.

Plaintiff asks the court to reverse the decision of the ALJ and remand either for calculation of benefits or for further proceedings. In certain situations, courts may remand solely for calculation of benefits. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (If the record provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose", the court may reverse and remand solely for the calculation and payment of benefits.); *see also Johnson v. Bowen*, 817 F.2d

11

983, 986 (2d Cir. 1987) ("where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."). However, if "there are gaps in the administrative record or the ALJ has applied an improper standard", the court will remand the case for further development of the record. *Parker*, 626 F.2d at 235. Here, the court has concluded that the ALJ's RFC determination and step five analysis must be remanded, and this remand may include further development of the factual record.

IV.   Order.

For the foregoing reasons, Plaintiff's motion for summary judgment (Doc. 19) is GRANTED IN PART AND DENIED IN PART, and the Commissioner's motion to affirm (Doc. 25) is DENIED. The decision of the Commissioner is reversed and the matter is REMANDED for further proceedings consistent with this Order.
SO ORDERED.

Dated at Rutland, in the District of Vermont, this 28th day of November, 2011.

Christina Reiss, Chief Judge
United States District Court